[No. 1094-2.    Division Two.    July 2, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. ARLEN D. CUZICK, *Appellant.*

*Jerome L. Buzzard* (of *Buzzard, Brown & Glenn*), for appellant.

*S. Brooke Taylor, Prosecuting Attorney,* for respondent.

ARMSTRONG, J.—The first impression issue presented by this appeal is whether a criminal defendant's right to trial by jury was violated when the trial court permitted an alternate or thirteenth juror to be in attendance during the deliberations of the jury. We hold that reversible error was committed.

There was substantial evidence to support the convictions of two counts of sodomy, from which the defendant appeals. The event giving rise to this appeal occurred immediately prior to final submission of the case to the jury, when the following colloquy took place between the court and counsel:

THE COURT: Mr. Taylor [Prosecuting Attorney] and Mr. Jones [Defense Counsel], do you agree that the procedure now for the alternate juror is that he is no longer needed now, because of the contingency and he should be dismissed? He can't go into the deliberations.

MR. TAYLOR: My feeling is that he should be present during the deliberations or in the room, but not to vote except in the event that during the deliberations one of the jurors becomes disabled, which is always a possibility. For instance, if someone were to get ill while locked up deliberating a verdict, we'd have a mistrial without an alternate. So I think he should continue to serve in that capacity.

THE COURT: Mr. Bates, at the outset of the case you were selected as the 13th juror to serve in the event of any misfortune to another member of the panel. That contingency has not arisen, so you are not going to be expected to participate, but you go with the jury and stay in attendance at all times, but you are not to say anything

or take any part in the discussions, or vote in any way. You are merely there to substitute in the event some mishap should happen to one of the other jurors. Is this understood, Mr. Bates? Mr. Bates, do you understand this?

MR. BATES: Yes, sir.

THE COURT: Fine. Well, I think then with that, the jury may retire to the jury room and we'll bring you the instructions and the exhibits shortly.

It might be observed, first of all, that defense counsel did not object to the procedure, nor did counsel or the defendant expressly consent or agree to the attendance of the alternate juror during the jury's deliberations. Secondly, the alternate juror was instructed by the court not to participate in the deliberations or vote of the jury. Defense counsel on appeal has attempted to show that the alternate juror, in fact, did participate in the deliberations. However, for reasons to be discussed below, we do not believe that either the failure to object to the procedure or the question of whether the alternate juror did or did not participate in the deliberations is determinative in this case.

■ We may begin our analysis by noting it is quite clear that permitting the alternate juror to attend deliberations was error. RCW 10.49.070, which was in effect at the time of the trial in this case, specifically provided that an alternate juror was to be discharged upon the final submission of the case to the jury.[1] Superior Court Criminal Rule

[1]"Alternate jurors. Whenever, in the opinion of a judge of a superior court about to try a defendant against whom has been filed any indictment or information for a felony, the trial is likely to be a protracted one, the court may cause an entry to that effect to be made in the minutes of the court, and thereupon, immediately after the jury is impaneled and sworn the court may direct the calling of one or two additional jurors, in its discretion, to be known as "alternate jurors." Such jurors must be drawn from the same source, and in the same manner, and of the same qualifications as the jurors already sworn, to be subject to the same examination and challenge: *Provided,* That the prosecution shall be entitled to one, and the defendant to two peremptory challenges to such alternate jurors. Such alternate jurors shall be seated near, with equal power and facilities for seeing and hearing the

6.5, which superseded RCW 10.49.070 as of July 1, 1973, also provides for substitution of alternate jurors only before submission of the case to the jury.[2]

Given that failure to discharge the alternate juror upon submission of the case to the jury was error, it must then be determined what showing of prejudice to the defendant must be made for the error to compel reversal of the conviction.

The right to trial by jury in criminal cases has long been an essential ingredient of the common law, and is preserved by both our state and federal constitutions. The sixth amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* . . ." (Italics ours.)

---

proceedings in the case, and shall take the same oath as the jurors already selected, and must attend at all times upon the trial of the cause in company with the other jurors; and for a failure so to do are liable to be punished for contempt. They shall obey the orders of and be bound by the admonition of the court upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff during the trial of the case, such alternate jurors shall also be kept in confinement with the other jurors; *and except, as hereinafter provided, shall be discharged upon the final submission of the case to the jury.* If, before the final submission of the case, a juror die, or become ill, so as to be unable to perform his duty, the court may order ·him to be discharged and draw the name of an alternate, who shall then take his place in the jury box and be subject to the same rules and regulations as though he had been elected as one of the original jurors." (Italics ours.)

[2]CrR 6.5 provides:

"When the jury is selected the court may direct the selection of one or more additional jurors, in its discretion, to be known as alternate jurors. Each party shall be entitled to one peremptory challenge for each alternate juror to be selected. When several defendants are on trial together, each defendant shall be entitled to one challenge in addition to the challenge provided above, with discretion in the trial judge to afford the prosecution such additional challenges as circumstances warrant. *If at any time before submission of the case to the jury* a juror is found unable to perform his duties the court shall order him discharged, and the clerk shall draw the name of an alternate who shall take his place on the jury." (Italics ours.)

Article 1, section 21, of the Constitution of the State of Washington similarly provides:

The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

It has been held that this valuable right of trial by jury which is carefully protected by our constitution must also be carefully guarded by the courts. *Gatudy v. Acme Constr. Co.*, 196 Wash. 562, 83 P. 2d 889 (1938).

The State's contention is that the error in this case did not infringe upon the defendant's right to trial by jury and does not warrant reversal of the conviction because the defendant has not shown any specific injury or prejudice caused by the presence of the alternate juror during the jury's deliberations. The State argues that an alternate juror must have the same qualifications, is subject to the same challenges, and takes the same oath as regular jurors. However, the State fails to mention the more significant factor that upon submission of the case to the jury, if the alternate juror is not needed, he should be discharged because he does not thereafter lawfully function as a juror in the case. He does not bear the responsibility of having to cast a vote to determine guilt or innocence. He is not charged with the duty of rendering a unanimous verdict, and participating in the deliberation, discussion and argument that responsibility necessarily entails. Once the case was submitted to the jury the alternate juror was really a stranger, an outsider, an observor.

It has long been established that a jury is entitled and required to deliberate in private. If a stranger, such as an officer of the court, is present for a substantial period of time during the deliberation of the jury, prejudice is presumed and the verdict cannot stand. The reason his presence is presumed to be prejudicial is that to some extent it must operate as a restraint upon the proper freedom of

action and expression of the 12 jurors who decide the case. When the jury retires to deliberate upon their verdict, it becomes necessary that they must have the opportunity for private and confidential discussion. The presence of a person in the room who may not take part in their deliberations is an intrusion upon this privacy and confidentiality and tends to defeat the very purposes of our jury system. *People v. Knapp*, 42 Mich. 267, 3 N.W. 927 (1879); *People v. Adame*, 36 Cal. App. 3d 402, 111 Cal. Rptr. 462 (1973); *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972); *Alternate or Additional Jurors*, Annot., 84 A.L.R.2d 1288, 1312 (1962).

Additionally, we note that there is no way of measuring the impact that an outsider might have upon the jury by influencing them with a casual word, gesture or expression. In the delicate process of the jury's deliberations, the presence of an outsider or stranger could be an influence upon the jury in manners that would defy our attempts at defining the potential prejudice. Jurors may be inhibited by the fear that they could not freely deliberate, argue and discuss the case in the confidence of their own group of sworn officers of the court. Furthermore, the 12 jurors responsible for the verdict may be inhibited by fear that an outsider, who does not have such responsibility, will publicly ridicule or otherwise impeach the verdict. We conclude that the presence in the jury room of the alternate juror to whom the case had not been submitted for decision was an invasion of the defendant's right of trial by jury.

We note that in *United States v. Allison*, 481 F.2d 468 (5th Cir. 1973), the defendants' attorneys agreed and requested that the alternate juror accompany the jurors to the jury room during the commencement of deliberations under admonition that he was to take no part in the deliberations. This unusual procedure was agreed upon because of the apparent illness of one of the jurors. When it became apparent that the ailing juror was recovering, the alternate juror was dismissed and the 12 jurors then proceeded with their deliberations without him. In that case the court re-

manded the case to the trial court for an evidentiary hearing to determine the extent of participation of the alternate juror upon the preliminary deliberations of the jury.

We are of the opinion that to require a showing of specific prejudice by inquiring into the actual deliberative process of the jury in the instant case, to determine what, if any, effect the presence of the outsider had upon their conduct, would be in itself a dangerous and unwarranted intrusion upon the sanctity of the jury and the privacy of their deliberations. Not only would it be difficult to recreate what actually occurred but it could lead to revealing factors that properly inhere in the verdict of the jury. The only proper course to prevent interference with the privacy and confidence of the jury is to insist upon a vigorous observance of the proper practice specifically directed by our legislature and the court rules.

The State calls to our attention the fact that the prosecution, in requesting the continued presence of the alternate juror, relied heavily upon the final draft of the Proposed Rules of Criminal Procedure prepared by a criminal task force appointed by the Washington Judicial Council, which contained a provision (Proposed Rule 6.6), that would have authorized the trial court to direct two alternate jurors to participate in the deliberations of the jury without vote. Although this may explain why an error occurred necessitating retrial, it does not change the fact that this was merely a proposal; the proposal was contrary to the express provisions of RCW 10.49.070, *supra*, and we might add that a provision contrary to the proposal was eventually adopted as the applicable rule by the Supreme Court. CrR 6.5, *supra*.

█ Finally, regarding any potential argument that the defendant waived his right to assert the irregularity of this procedure by the failure of his trial attorney to register an objection when the court requested comments from counsel on the procedure to be followed, it is sufficient to note that counsel on appeal properly recognized, when he raised this issue before us, that he could secure review of an invasion

of a constitutional right even though the error was not raised at trial. *State v. Vining,* 2 Wn. App. 802, 472 P.2d 564 (1970).

We have examined defendant's remaining contention that the victim's mother was erroneously permitted to give alleged hearsay testimony as to the physical condition of her son after the crime occurred, and we find the contention to be lacking substantial merit.

Because of the irregular jury procedure, the conviction is hereby reversed and the cause remanded for retrial.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied August 14, 1974.

Review granted by Supreme Court October 18, 1974.