[No. 40159-9-I.   Division One.   January 25, 1999.]

FREDERICK L. JONES, SR., *Appellant*, v. SISTERS OF PROVIDENCE IN WASHINGTON, ET AL., *Respondents*.

*Lembhard G. Howell* of *Lembhard G. Howell, P.S.*, for appellant.

*William G. Adams* of *Hoffman Hart & Wagner*; *William R. Hickman* of *Reed McClure*; and *Margaret A. Sundberg* of *Williams, Kastner & Gibbs, P.L.L.C.*, for respondents.

KENNEDY, C.J. — Frederick L. Jones, Sr., appeals the judgment entered on the jury's verdict in his medical malpractice action against Sisters of Providence in Washington d/b/a Providence Medical Center, Susan Lo, M.D., and Richard G. Foutch, M.D., contending that the trial court committed reversible error when it allowed an alternate juror to participate in the jury's deliberations without a vote.[1] Because the alternate juror's participation in the jury deliberations violated the cardinal requirement that juries must deliberate in private, and because it does not

[1] We address Jones' other contentions on appeal in the unpublished portion of this opinion.

affirmatively appear that there was not and could not have been any prejudice as a result, we agree and reverse.

## FACTS

On June 15, 1995, Mr. Jones filed a summons and complaint for medical malpractice against Providence, Dr. Lo, and Dr. Foutch, alleging negligence based on Drs. Lo and Foutch's failures to diagnose his ischemic leg. The trial court impaneled a jury of twelve with two alternates. Trial commenced on November 14, 1996. Midtrial, one of the jurors was dismissed due to weather-related transportation problems. At the close of the case on November 27, 1996, the trial court asked the remaining alternate juror to participate in the jury's deliberations without a vote:

> Before the trial started, we had designated seats for alternates, and Mr. Caudell, you are in the alternate seat.
>
> What I'm going to suggest, and I hope it meets with your approval, is that when we return from the lunch hour, that you deliberate with the jury, but I'm going to caution you that you may not vote on any question before the jury.
>
> The reason I'm proposing this is as follows: It doesn't happen often, but if any of the other jurors were not able to complete jury service, I would call you back and the deliberations would have to start all over again.
>
> I know you've paid close attention to this case; as I say, you are welcome to participate in the discussions on all the questions before the jury, but you may not vote; I do hope you'll take me up on that. If you feel that your personal life demands you, then you are excused for the current time, but I do caution you that I may have to call you back if any of the other jurors are not able to complete their service during deliberations.

3 Report of Proceedings at 168-69. At the time, none of the parties objected. The alternate juror participated in the deliberations, but left the jury room before the regular jurors returned their verdict on December 2, 1996. The jury found in favor of Drs. Lo and Foutch.

Mr. Jones moved for a new trial, contending that the trial court erred by allowing the alternate juror to deliberate with the jury. The trial court denied Mr. Jones' motion:

> The alternate juror was permitted to participate in deliberations. Counsel were informed before deliberations began based on the court's concern that because of potential delay from the Thanksgiving holiday about to begin, that it might be very difficult to include him later should one of the jurors fail to appear. The alternate and jury were instructed that he could not vote on any question before the jury.
>
> He returned on Monday but left at lunch time, several hours before the jury rendered its verdict on the first question. Thus, the court concludes he did not vote on any jury question. CR 47(b) permits the court to discharge the alternate at a later time. Moreover, counsel never raised an objection before or during the jury's deliberations.

Clerk's Papers at 282. Mr. Jones appeals.

## DISCUSSION

Our Supreme Court has held that reversible error occurs when an alternate juror is present during criminal deliberations "unless 'it affirmatively appears that there was not, and could not have been, any prejudice.' " *State v. Cuzick*, 85 Wn.2d 146, 150, 530 P.2d 288 (1975) (quoting *State v. Carroll*, 119 Wash. 623, 624, 206 P. 563 (1922)). The Supreme Court's reasoning was twofold. First, the court noted that permitting the alternate juror to observe deliberations—even if the juror did not actively participate in the deliberations—violated former RCW 10.49.070, which "specifically required dismissal of alternate jurors upon submission of a case to the jury." *Cuzick*, 85 Wn.2d at 148. Second and "more significant," the court concluded that "[s]uch observation, even by one sworn to secrecy and silence, violates the cardinal requirement that juries must deliberate in private." *Id.* at 148-49; *see also State v. Aker*, 54 Wash. 342, 347, 103 P. 420 (1909) ("We are not inclined to sanction any practice which permits the invasion of the

privacy of the jury room during deliberation."), *quoted in State v. Smith*, 43 Wn.2d 307, 310, 261 P.2d 109 (1953).

Drs. Lo and Foutch contend that the *Cuzick* rule should not be applied in civil proceedings because CR 47(b), unlike former RCW 10.49.070, does not *require* the trial court to discharge alternate jurors upon submission of the case to the jury: "An alternate juror who does not replace a regular juror *may* be discharged or temporarily excused after the jury retires to consider its verdict." CR 47(b) (emphasis added). We reject this argument for two reasons.

■ ■ First, although CR 47(b) does not forbid an alternate juror from participating in civil deliberations, it also does not expressly authorize an alternate juror to participate in or observe deliberations. Rather, CR 47(b) contemplates that an alternate juror may be temporarily excused and then recalled to replace a regular juror who is unable to complete deliberations—at which time deliberations would begin anew. *Cf. State v. Johnson*, 90 Wn. App. 54, 72, 950 P.2d 981 (1998) (construing analogous CrR 6.5).

Second, the mandatory language of RCW 10.49.070 was not the primary basis for the Supreme Court's holding in *Cuzick*. Rather, the court based its holding in principle on the "more significant" and "cardinal requirement that juries must deliberate in private." *Cuzick*, 85 Wn.2d at 149. Indeed, if this court were to adopt Drs. Lo and Foutch's argument that CR 47(b) authorizes trial courts to permit alternate jurors to participate in civil deliberations, then it logically follows that CrR 6.5—which succeeded former RCW 10.49.070 and closely parallels CR 47(b)—would also authorize trial courts to permit alternate jurors to participate in criminal deliberations.

Dr. Foutch also contends that the constitutional concerns protecting the sanctity of the jury room in criminal cases simply do not apply to civil cases. Although the "cardinal requirement that juries must deliberate in private" is a principle of "constitutional stature," the cardinal requirement that juries must deliberate in private "was borne out of a concern to protect the integrity of the jury system."

*State v. Lehnherr*, 30 Or. App. 1033, 569 P.2d 54, 57 (1977). That is, permitting an alternate juror or other stranger to observe and participate in the jury's deliberations compromises the sanctity of the jury's deliberations and, in turn, could undermine the public's confidence in our judicial system as whole:

> It has been said the deliberation of the jury is a final and crucial stage of any trial. In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from all improper influences, but from the appearances thereof. It is often said that the jury trial is one of the bulwarks of our liberty, but it will remain so only as long as public confidence in the institution prevails.

*Daniels v. Bloomquist*, 258 Iowa 301, 138 N.W.2d 868, 872 (1965). "[T]he same concerns of the sanctity and secrecy of the jury room apply with as much force to civil as to criminal trials and as much implicate the rights of civil as of criminal litigants." *Eickmeyer v. Dunkin Donuts*, 507 So. 2d 1193, 1194 (Fla. Dist. Ct. App. 1987); *see also State Highway Comm'n v. Dunks*, 166 Mont. 239, 531 P.2d 1316, 1318 (1975) ("It is true legal principles have been applied less stringently to civil juries than criminal juries, however, we cannot conclude that there is a double standard that can be applied to the sanctity of a jury's deliberations based on criminal or civil process."). Therefore, applying the reasoning of *Cuzick*, 85 Wn.2d 146, we hold that it is error for a trial court to permit an alternate juror to participate in civil jury deliberations.

Nonetheless, Dr. Lo maintains that an alternate juror's participation in civil deliberations should not constitute reversible error absent a showing of actual prejudice. *See, e.g., United States v. Olano*, 507 U.S. 725, 737-41, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (holding that although "the presence of alternate jurors does contravene 'the cardinal principle that the deliberations of the jury shall remain private and secret,' " reversal is not required under the federal rules of criminal procedure unless actual preju-

dice is shown). But our Supreme Court has held that prejudice must be presumed where the sanctity of the jury room has been breached, because it is impossible to recreate what occurred in the jury room and what effect or influence the alternate juror's presence may have had on the jury's deliberations. *Cuzick*, 85 Wn.2d at 150. Therefore, notwithstanding federal case law to the contrary, an alternate juror's participation in civil deliberations constitutes reversible error unless it affirmatively appears that there was not and could not have been any prejudice.

Based on the record in this case, it does not affirmatively appear that there was not or could not have been any prejudice. That is, although the alternate juror left the jury room before the final vote, it cannot be determined what effect or influence the alternate juror's comments and actions during deliberations had on the jury. Therefore, the alternate juror's participation in the jury's deliberations constitutes reversible error.

As a final matter, Drs. Lo and Foutch contend that even if the trial court erred when it permitted the alternate juror to participate without a vote in the jury's deliberations, Mr. Jones waived the error by failing to object when the trial court announced that the alternate juror would be permitted to participate in the deliberations without a vote. In *Cuzick*, the respondent also argued that the appellant "waived his right to challenge the makeup of the jury when his counsel failed to object to the alternate juror's admission to the jury room at the time it was ordered." *Cuzick*, 85 Wn.2d at 149. Our Supreme Court resoundingly rejected this argument, noting again the importance of protecting the sanctity of the jury room:

> "Objection to deviation from the authorized number of jurors has been held nonwaivable, however. Even if waiver is allowed, the importance of the jury secrecy principles affected is such that it can only be made informedly and affirmatively by the defendant himself, *not implied from the silence of his counsel*."

*Id.* (emphasis added). Nonetheless, Drs. Lo and Foutch

argue that this rule should not be extended to the civil context, noting that waiver of jury trial may be implied in the civil context but must be express in the criminal context. *Compare Ford Motor Co. v. Barrett,* 115 Wn.2d 556, 563, 800 P.2d 367 (1990) (holding that jury trial in a civil action may be waived by inaction where the party fails to demand jury trial or pay fee on or before setting of trial date) *with City of Bellevue v. Acrey,* 103 Wn.2d 203, 207, 691 P.2d 957 (1984) (holding that a criminal defendant's waiver of a jury trial must be affirmative, unequivocal, and on the record).

■ Although the standard for waiving a jury trial differs between civil and criminal proceedings, this difference can be attributed to the court's duty to carefully safeguard a criminal defendant's fundamental constitutional right to a jury trial. *See Acrey,* 103 Wn.2d at 207 (citing *Glasser v. United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942)). But in this case, as discussed above, we are not only concerned about an individual's right to a jury trial, but also the integrity of the judicial process as a whole. Moreover, once Mr. Jones invoked his right to a civil jury, he had a reasonable expectation that the trial court would employ procedures that protected the jury from outside influence. *Cf.* CR 47(b) ("When an alternate juror is temporarily excused but not discharged, the trial judge shall take appropriate steps to protect such juror from influence, interference or publicity which might affect the juror's ability to remain impartial[.]").

■ By permitting the nonvoting alternate juror to participate in the jury's deliberations, the trial court compromised the cardinal principle that juries must deliberate in private. "Being that the jury is a fundamental part of our justice system, waiver of the right to jury or to a variation in its constitution should not be taken lightly, and certainly not inferred except by express written agreement or a stipulation on the record by counsel." *Cabral v. Sullivan,* 961 F.2d 998, 1003 (1st Cir. 1992); *accord Cuzick,* 85 Wn.2d at 149. Therefore, without deciding whether civil litigants can

ever stipulate to a nonvoting alternate juror's participation in the jury's deliberations, we hold that Mr. Jones did not waive the trial court's error by failing to object when the trial court announced that the alternate juror would be permitted to participate in the jury's deliberations without a vote.

Reversed and remanded for a new trial.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

Cox and ELLINGTON, JJ., concur.

Review granted at 138 Wn.2d 1001 (1999).